UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Eric Watters                                       Civil Action No. 16-0577

versus                                             Magistrate Judge Carol B. Whitehurst

Wal-Mart Louisiana, LLC, et al.                    By Consent of the Parties

**MEMORANDUM RULING**

Before the Court is a Motion For Summary Judgment filed by defendants, Wal-Mart Louisiana LLC and Wal-Mart Stores, Inc. (collectively, "Wal-Mart") [Doc. 28]. Plaintiff Eric Watters opposes the motion [Doc. 34] and Wal-Mart has filed a Reply brief [Doc. 42]. For the reasons that follow, the motion for summary judgment is GRANTED.

*I. Background*

The following facts are undisputed:

- The plaintiff alleges he injured himself after his left foot caught the floor mount of a stainless steel guard rail surrounding a meat bunker at Wal-Mart Store No. 531 on May 3, 2016.

- The plaintiff alleges he was standing next to the floor cooler, facing forward and looking down at the merchandise inside the cooler. The plaintiff alleges his feet were under the rail that surrounds the cooler. The plaintiff alleges that to his left was a pallet full of inventory that was located approximately 2 inches from the rail and 4-5 inches from the floor cooler. The plaintiff alleges that he was scooting to his left between the floor cooler and the pallet filled with inventory in order to

see the inventory in the floor cooler next to the pallet when his left foot came into contact with the mounting, causing him to trip.

- The guard rail system in place at Store No. 531 is a Star Guard product manufactured by SBI. SBI is one of four top manufacturers which offers a guard rail product of this design. This particular guard rail system is referred to as the SSB guard rail system. The SSB system consists of a horizontal stainless steel railing supported and attached to the floor by vertical floor mounts, which allow installation close to bunkers. The SSB system is used in grocery stores and retail stores with grocery departments to protect bunkers and coolers from damage.

- Wal-Mart argues the SSB guard rail system in place at Store No. 531 is the same system in place at all Wal-Mart stores and virtually every other grocery store in the nation, and that this system consists of the industry standard for protecting bunkers in grocery stores.

- Two of the top four manufacturers also offer a second design, the CB model, which is attached to the floor with a "C" shaped mount and is intended for high impact applications such as in warehouses, stock rooms, and cart corrals.

- Guard rails are necessary to protect the refrigerated bunkers from damage from shopping carts, pallet jacks, and other equipment. Without the guard rails, the electrical and plumbing components of the bunkers could be damaged, resulting in loss of product and threat of injury to customers, who could slip on liquid leaking from the broken bunker or be injured by protruding metal or other pieces of damaged bunker.

- As best evidenced by the photographs in this case, the SSB guard rail system is easily observable. It is chrome in color and consists of a railing completely surrounding the bunker, supported by several floor mounts, each approximately six and one-half (6 ½) inches tall.

- The SSB guard rail system does not violate any building code, ordinance, statute, or other safety regulation.

- There is no evidence that the CB system is safer or poses less of a tripping hazard than the SSB system. In fact, the CB system, which is ordinarily used in high impact applications where less customer traffic is expected, such as in warehouses and cart corrals, actually poses *more* of a tripping hazard, because the CB floor attachment extends above the floor which could cause a misstep, and because the mounting support extends beyond the face of the rail into the aisle space.

- The placement of the pallet next to the meat bunker in this case did not violate any Wal-Mart policy or safety code. The accident occurred at 9:45 p.m., and the pallet of canned goods was placed nearest the aisle where the goods were to be stocked.

- Since Wal-Mart Store No. 531 opened in 2000 until plaintiff's accident, there have been no other reported trip-and-fall accidents similar to plaintiff's involving the guard rail system, despite millions of customers having shopped at the meat bunkers during that time.

Plaintiff filed this action in this Court on April 27, 2016. Wal-Mart filed the instant motion for summary judgment moving to dismiss plaintiff's claims against it on grounds plaintiff cannot prove that either the guard rail floor mount or the placement of the pallet in this case presented an unreasonable risk of harm to Wal-Mart customers or that such was reasonably foreseeable as required under Louisiana's slip-and-fall statute, La. Rev. Stat. §9:2800.6.

## *II. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the

3

record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id*. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of her case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id*. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## III. Analysis[1]

"In Louisiana, 'every act ... of man that causes damage to another obliges him by whose fault it happened to repair it.' La. Civ. Code art. 2315(A). Under Louisiana's 'standard negligence analysis'—the 'duty-risk analysis'—a plaintiff must prove five elements: first, that the defendant had a duty to conform his conduct to a specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).

For 'merchants' like Wal-Mart, however, § 9:2800.6 of the Louisiana Revised Statutes alters this analysis slightly. Merchants 'owe [ ] a duty ... to exercise reasonable care to keep [their] aisles, passageways, and floors in a reasonably safe condition,' which 'includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.' La. Stat. § 9:2800.6(A). When someone sues a merchant for damages 'as a result of an injury ...

---

[1] As an initial matter, the Court notes the plaintiff's opposition brief improperly contains several arguments more appropriately addressed in a motion in limine. To wit, the plaintiff asserts various arguments seeking to strike Wal-Mart's attachments and exhibits on grounds they cannot be authenticated and/or are not supported. Such arguments are more appropriately asserted in motions in limine, not in an opposition brief to a motion for summary judgment.

or loss sustained because of a fall due to a condition existing in or on [the] premise,' the plaintiff must prove 'in addition to all other elements of [the] cause of action':

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La.Rev.Stat. § 9:2800.6(B). *Duncan v. Wal-Mart Louisiana, LLC*, 863 F.3d 406, 409 (5th Cir. 2017)

The parties agree that this case is exclusively governed by the Louisiana Merchant Liability Statute, La.Rev.Stat. § 9:2800.6. In order to recover damages for injuries sustained in a slip or trip and fall accident, the plaintiff has the burden of proving all three of the requirements of La. R.S. 9:2800.6(B), and the failure to prove any requirement is fatal to the cause of action. *Alonzo v. Safari Car Wash, Inc.*, 75 So.3d 509, 511 (La.App. 5 Cir. 9/27/11).

The plaintiff alleges that his accident was caused by two hazards: (1) the design of the guard rail floor mount around the bunker; and (2) the placement of the pallet next to the bunker. Wal-Mart seeks summary dismissal of the plaintiff's claims on

grounds the plaintiff cannot overcome the burden to prove that any "condition" which was unreasonably dangerous contributed to his fall.

In determining whether a condition presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. *Bufkin v. Felipe's La., LLC*, 171 So.3d 851, 856 (La. 2014). In determining whether a condition is unreasonably dangerous, courts have adopted a risk-utility balancing test. This test encompasses four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs' activities in terms of its social utility, or whether it is dangerous by nature. *Pryor v. Iberia Parish School Bd.*, 60 So.3d 594, 596–97 (La. 2011).

In order to prove a condition presented an unreasonable risk of harm, Louisiana law requires the plaintiff to present evidence such as "expert testimony, records indicating a history of accidents resulting from the alleged defect, or reference to building codes or industry standards that the defect allegedly violates." *Clark v. Circle K Stores, Inc.*, 2014 WL 4129496, at *3 (M.D. La. Aug. 14, 2014). Because it is the plaintiff's burden to prove the existence of a defect and that the defect was

an unreasonable risk of harm, the failure to present such evidence is fatal.[2]

Otherwise, the plaintiff rests merely on conclusory allegations, which are insufficient to defeat summary judgment.

In support of its motion, Wal-Mart has submitted the deposition testimony of the plaintiff Eric Watters; video surveillance of the accident; photographs taken on the date of accident, authenticated by Jaime Romine, Assistant Manager of Wal-Mart 531; the deposition of Jason Leblanc; the deposition of Jaime Romine; the deposition of Barry Kitterman, Wal-Mart Director of Mechanical Standards and Support; the deposition of Brent Frick, plaintiff's expert; and the affidavit and expert report of Philip Beard, Wal-Mart's expert.

### A. Social Utility Analysis: The Guard Rail System

#### 1. The utility of the guard rail system

Plaintiff does not dispute that the guard rail surrounding the bunker serves a significant social utility purpose by protecting coolers from shopping carts, and that the floor mount serves the purpose of securing the railing to the floor. It is undisputed that the guard rail system prevents damage to the bunkers by preventing

---

[2] *Shields v. Dolgencorp, LLC*, CV 16-1826, 2016 WL 6892889, at *3 (E.D. La. Nov. 23, 2016). See also *Labit v. Palms Casino & Truck Stop, Inc.*, 2011-1552 (La.App. 4 Cir. 5/9/12, 9), 91 So.3d 540, 546, *writ denied*, 2012-1310 (La. 9/28/12), 98 So.3d 843, and *Foster v. Pinnacle Entm't, Inc.*, 16-8 (La.App. 5 Cir. 4/27/16, 13), 193 So.3d 288, 296 (summary judgment granted in favor of defendant where the plaintiff failed to offer any expert evidence or other acceptable evidence).

shopping carts, pallet carts, and other equipment from impacting the bunkers. Wal-Mart argues – and the plaintiff offers no evidence to dispute – that without the guard rail system to protect them, the thin metal skins of the bunkers could be damaged and protrude into aisles. Further, unmitigated impact to the bunkers could also damage the plumbing and electrical components housed within the bunkers, resulting in leaks, which could pose a slipping hazard, as well as loss of product. Consequently, the parties agree that the guard rails and floor mounts serve an important social utility.

### 2. Likelihood and magnitude of the harm (the open and obvious factor)

As to the likelihood and magnitude of harm, federal and Louisiana state courts have generally held that a potentially dangerous condition does not present an unreasonable risk of harm where that condition is open and obvious to all. *See, e.g., Taylor v. Wal–Mart Stores, Inc.*, 2006 WL 1476031, *2 (W.D.La. May 23, 2006) (citing *Pitre v. La. Tech. Univ.*, 673 So.2d 585) (La., 1996) ("A potentially dangerous condition that is open and should be obvious to all is not unreasonably dangerous."); *Jennings v. Ryan's Family Steak Houses, E., Inc.*, 2005 WL 2180487, *3 (W.D.La. Sept.9, 2005) (citing *Durman v. Billings*, 873 So.2d 872 (La.App. 2 Cir. 5/12/04) ("If the risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable."). The instant case turns on whether the guard rail system and floor

9

mount constituted an unreasonable risk of harm to plaintiff, or whether the foregoing condition was "open and obvious," and, thus, not unreasonably dangerous.

In the instant case, there does not appear to be a dispute that the guard rail itself is an easily observable stainless steel bar surrounding the bumper; it is obviously raised above the floor and is visible to any approaching customer. The floor mount on which the plaintiff tripped is a vertical stainless steel leg that is also easily observable to approaching customers. It stands approximately six and a half inches high and is one of several which support the stainless steel railing running the length of the bunker. The plaintiff's own expert testified that a customer approaching the guard rail would be able to see it. The plaintiff argues, however, that once a customer is standing over the bunker and peering inside it, the guard rail is no longer visible, nor is the floor mount. This Court finds the plaintiff's argument unavailing, as the question is one of *reasonableness*. After review of the store photographs and the video submitted by Wal-Mart, the Court concludes it is patently *unreasonable* to assume that an approaching customer, who has seen the clearly visible floor mount and guard rail system on his approach to the cooler, will – once standing over the cooler – simply forget the existence of the guard rail system which may no longer be visible when the customer is peering into the cooler. As Wal-Mart argues, such an argument is not representative of, or consistent with, the ordinary shopping

experience.

Thus, after consideration of the evidence and arguments offered by the parties, the Court concludes the guard rail system and floor mount were easily visible and observable.

### 3. Cost of preventing the harm

With respect to the third factor – the cost of preventing the harm – the plaintiff has come forward with no evidence that there is a preferred guard rail system on the market. Rather, the plaintiff attempts to argue that Wal-Mart has not substantiated its claims that the SSB guard rail system represents the industry standard. Wal-Mart argues the SSB guard rail system installed at Store 531 is the same system which is used in all of Wal-Mart's numerous stores, and the same type of guard rail system is used in the vast majority of grocery stores across the nation. In response, the plaintiff argues there are alternative coolers that do not have a railing system. To the extent the plaintiff is arguing that Wal-Mart should replace its SSB system with the CB model, which is attached to the floor with a "C" shaped mount and is intended for high impact applications such as in warehouses, stock rooms, and cart corrals, Wal-Mart argues that the cost to replace all of Wal-Mart's guard rail systems surrounding all of its bunkers in all of its stores would be "mind-boggling." The plaintiff has come forward with no evidence to refute this, and therefore, fails to demonstrate that the cost to prevent the alleged harm would be negligible.

#### 4. The nature of the plaintiff's conduct as dangerous

Finally, as to the fourth factor, this Court concludes the nature of the activities in question in terms of social utility, or whether it is dangerous by nature, militates in favor of granting summary judgment in Wal-Mart's favor. While the act of grocery shopping is clearly not inherently dangerous, the plaintiff was not shopping as an ordinary prudent shopper. Instead of seeking assistance, the plaintiff chose to slide from right to left along the bunker to reach around the pallet in an effort to reach an item he wanted in the bunker. It was incumbent upon the plaintiff to exercise reasonable care in this maneuver. Additionally, the placement of a guard rail system to protect the coolers from which customers select food is not dangerous by nature.

Therefore, after consideration of the social utility factors under Louisiana law, this Court concludes the guard rail system in place did not create an unreasonable risk of harm to the plaintiff.

#### B. Social Utility Analysis: The Placement of the Pallets

The plaintiff also argues the placement of the pallet next to the cooler created an unreasonable risk of harm because it forced him to reach around it to get items from the cooler. Although the plaintiff advances this argument, he does not argue the social utility factors in connection with the placement of the pallet.

As an initial matter, this Court notes that Louisiana courts interpreting the

Louisiana merchant liability statute have held that a grocery store pallet does not inherently pose an unreasonable risk of harm. *Upton v. Rouse's Enter., LLC*, 186.So.3d 1195, 1202 (La. App. 5th Cir. 2/24/16), *writ denied,* 191 So.3d 1057 (La. 5/13/16), *citing See Reed v. Home Depot USA, Inc.*, 843 So.2d 588, 592 (La.App. 2nd Cir. 4/9/03), *writ denied*, 855 So.2d 245 (La.10/10/03). The court in Upton stated:

> Certainly, the display in the instant case is a condition any customer would reasonably expect to encounter in the produce department of a grocery store, and it presents no unreasonable risk of harm to a customer exercising reasonable care.

*Upton,* 186.So.3d at 1202.

Wal-Mart argues – and the plaintiff does not dispute – that the placement of the pallet next to the cooler was consistent with Wal-Mart's policies and procedures, which are designed to ensure that the process of bringing merchandise from inventory out to the store shelves interferes minimally with customers. Wal-Mart's policy is that stocking of shelves should occur after 9:00 p.m., outside of peak shopping times. Two additional Wal-Mart policies are that pallets should be placed as near as possible to the aisles where the items to be stocked, and pallets of merchandise should be placed so as to minimize interference with foot traffic and to ensure adequate spacing allowing ingress and egress in the case of emergency.

In the instant case, the placement of the pallet in question complied with Wal-

Mart's policies, as follows: (1) the plaintiff's accident occurred at 9:45 p.m., which is after the 9:00 p.m. hour when Weal-Mart begins stocking its aisles; (2) the pallet in question contained canned goods and was located as near as possible to the canned good aisle; and (3) the pallet was placed close to the cooler so as not to interfere with customer traffic and not block the aisles, per Fire Marshal requirements. Plaintiff's own expert admitted that he had no problem with the placement of the pallet in that regard.[3]

The only evidence that the plaintiff offers in support of his argument that the placement of the pallet was dangerous is his testimony that he had to reach around the pallet to get to the products in the cooler. The plaintiff's argument, essentially, is that it was inconvenient for him to reach around the pallet to obtain products from the cooler because the pallet was in his way. The foregoing argument is insufficient to support an argument that the placement of the pallet was *unreasonably dangerous.*

The absence of accident history also supports a finding that the conditions in question – both the guard rail system and the placement of the pallet – was not unreasonably dangerous. The plaintiff offered no evidence that the guard rail system or the placement of a large pallet next to a meat bunker has caused any other accident.

---

[3] *See* Deposition of Brent Frick, attached as Exhibit H to defendant's motion for summary judgment, at pp. 71-74.

On the contrary, Wal-Mart's expert, Philip Beard, researched the accident history of Wal-Mart Store No. 531 and found that since the store opened in 2000 until the time of the plaintiff's accident on May 3, 2015, no other such accidents have been reported, despite the fact that an estimated two million uses of the bunkers occurred during that time.[4] (Exhibit I—Beard Affidavit ¶9(l)). Thus, the plaintiff has no evidence that any alleged risk posed by the guard rail system or placement of the pallet next to the bunker was reasonably foreseeable, or should have been addressed by Wal-Mart in another manner.

Accordingly, considering the factors outlined by Louisiana law and applying the risk–utility balancing test and applicable substantive law, the Court finds that the guard rail system and floor mount, as well as the placement of the pallet, do not rise to the level of an unreasonably dangerous condition. Therefore, the plaintiff is unable to satisfy all of the elements of the social utility analysis. It is well-settled that the failure to prove all three of the requirements of La. R.S. 9:2800.6(B) is fatal to the plaintiff's cause of action. *See,.e.g., Alonzo v. Safari Car Wash, Inc.*, 75 So.3d 509, 511 (La.App. 5 Cir. 9/27/11). Consequently, the Motion For Summary Judgment filed by defendants, Wal-Mart Louisiana LLC and Wal-Mart Stores, Inc. is

---

[4] *See* Affidavit of Philip Beard, attached as Exhibit I to defendant's motion for summary judgment, at ¶9(1).

**GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 18th day of January, 2018.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**